I'd like to thank the court for the opportunity to address my arguments to the panel on behalf of appellate defendants. The district court erred when denying appellate's motion to dismiss because they are entitled to qualified immunity. As Howard does not allege any plausible facts establishing a violation of the Eighth Amendment based on his temporary confinement in a shower shell, much less his burden of establishing a violation of clearly established law beyond debate. Howard failed to establish a violation of the Eighth Amendment because, one, he failed to plausibly allege that his temporary confinement in a shower shell objectively posed an intolerable risk of serious harm. Is a temporary confinement to the shower the eight hours? That's what he alleges in his complaint. Yes, Your Honor. Well, aren't we supposed to consider that those allegations, you know, in the light most favorable to the individual? Yes, Your Honor. That's true because these — and in this case, we have consistently, in response to his arguments, have, for purposes of the motion to dismiss alone, relied on that it was eight hours in a shower shell. And he was in crutches, is that correct? That's what he alleges, Your Honor. Okay. What he alleges are the facts that were dealing with, so we don't have to keep repeating that he alleged it, but go ahead. Okay. Okay. He also generally or often used a wheelchair, is that right? Say that again, Your Honor? He also generally or often used a wheelchair, is that right? No, Your Honor. That was later in 2020, two years after he was convicted. Well, it says in the complaint that he attacked a plaintiff who was handcuffed, who fought to keep inmate Davis from getting played into a headlock while a plaintiff sent a wheelchair handcuffed, apparently at that time. Right. In 2020, Your Honor, where these events happened with respect to the shower was 2018. I'm sorry. I thought that that referred to the same incident. No. No, Your Honor, it does not. There's two separate incidents. That particular instance, we want our motion to dismiss below. He also failed to plausibly allege that each of the three defendant's correctional officers personally had actual subjective knowledge that his confinement posed any risk of harm. And three, he failed to plausibly allege that these three correctional officers were in a position to take any steps to alter Howard's confinement, all of which are necessary to establish an Eighth Amendment violation. Even if Howard plausibly alleged that these three officers actually knew that Howard was being deprived of medication, food, water, and bathroom breaks for eight hours, this Court and other circuit courts have repeatedly held that such separations are of limited duration and do not establish a violation of the Eighth Amendment. Howard, therefore, cannot point to any Supreme Court or circuit authority which squarely governs the facts of this case and put defendants on notice that their conduct, beyond the date, violated the Eighth Amendment. I'm going to go through each of these things that I've just outlined, unless the Court has specific questions about where we want to go. But otherwise, I'm going to start with the objective problem in Farmer. Howard's temporary confinement did not pose an objective intolerable risk of serious harm required by the first prong of Farmer. Howard had access to a drain. He was confined in a shower, yet he was not shackled. So he could sit or stand as he pleased. You say that, but why isn't it a reasonable inference from his complaint that he could not sit? Well, because he says he's not shackled. But he basically says, I was forced to stand on crutches. So why doesn't that sound like he was forced to stand and couldn't sit? Well, forced to stand is a subjective. Whether or not he was forced to stand is a subjective. And this is an objective test. He's not saying that I could not sit. He was saying he's saying I was forced to stand because he was on crutches. And you're saying that's a reasonable inference, that there was actually a chair there and he could have sat from those chairs? No, Your Honor. I am not saying that there was a chair in there. No, Your Honor, I'm not. I'm saying he could have sat on the floor if he wanted to. Even though he's on crutches? Yes, even though somebody on crutches can sit on a floor, Your Honor. I don't think there's a reasonable inference. Well, is that a reasonable inference? I mean, what do you think the reason for the crutches was? Well, I think the reason for the crutches was because to enable him to walk from one place to another place. And so he had crutches to enable him to do that. But I don't think having crutches is a reasonable inference that you cannot sit, Your Honor. I think I see people all the time sitting with crutches. Well, why would he think that he was forced to stand if he could have sat? Your Honor, why he says he's forced to stand is a mystery to me when he doesn't say he was shackled at all. I think that if he would have said that, for example, he was shackled to the shower, which he doesn't allege, that that's a possibility that that may prevent it because that's what the cases say. But by saying he's forced to stand, why isn't it a reasonable inference? Because, Your Honor, for example, if you go back to Iqbal, Your Honor, if you go back to Iqbal, it's a conclusory allegation. I was forced to stand. But it gives no facts to say why he was forced to stand. Well, he keeps calling this a cage, not a shower. It's a shower cage. It's – well, he calls it a cage. It's a shower cell, Your Honor. It's a shower. It's what it is. It's a shower. But maybe – I mean, we only have the complaint and we have to take the inferences in his favor. So he calls it a shower cage. So maybe there's not even room to sit down for what we can take from the inferences. Well, Your Honor, that wouldn't be a proper inference either because a cage, if you take that, for example, he says it's a cage, there's no – there's no – there's no inference to be drawn about when you say it's a cage that a cage is only two feet by two feet or a cage, which I've seen, you know, or it could be an entire cell. He could also call his cell a cage. He said it's small. Well, that's also – that's also relative. A small, unsanitarized cage. And if – and I'd be willing to share the court. I can tell you what I – what the size of it is. It's three by six. I mean, that's on the record.  But that's – that's – that is the size. So somebody might say three by six is small. Somebody might say three by six is large. But for – to be in a place that's three by six for eight hours is not intolerable risk of harm, Your Honor. And – but that could – that could be small. So your – your argument depends on us believing that he actually could have sat even though he's saying that he was forced to stand. No. My argument doesn't depend on that entirely, Your Honor. But it – it – it – what it is saying is, is that when you make – under Tuam, under Iqbal, if you're making conclusory allegations without underlying facts to support your claim, then you're not entitled to – you're not entitled to – Excuse me. Sorry. The conclusory allegations that we can't accept are like legal motivations that would be an element of the test. We are – this isn't a claim the motivation was discriminatory. This is just a claim. I was forced to stand. That sounds very factual. It doesn't sound like speculation of someone else's intent or anything like that. I don't really even understand why you're saying this is the kind of thing that can't be alleged. Well, I just have to respectfully disagree, I guess, Your Honor, because my – my understanding, if you look at the – if you want to go back and look at the facts in Tuambley, the kind of things he was alleging in Tuambley was, is that the – that the Attorney General was the architect of – of this discriminatory motive and things like that. And so – and that the Court said that things like that, for example, saying I'm the architect, which Your Honor would say, I guess, would say that is – that's a – that's a fact, right, that he's the architect is a fact, right? I think the problem was the discriminatory motive. The Supreme Court – no, but they said that he was the architect of the – of the discrimination, which he puts out what it was. And you can say that that was all – you could – you could make a similar argument, that that's a factual argument. But it's not really. It's a conclusory argument because he doesn't put any facts to say, well, that's what he needs to say. He needs to say why he – he was forced to stand. With somebody, for example, there's all kinds of things you could speculate as the reason why he was forced to stand. He could say I was forced to stand because I didn't want to sit. I was forced to do it because I just didn't want to do it. Or I was forced to stand because some officer said if I sit, I'm going to be punished. That could be a way to – why he was forced to stand. There could be all kinds of reasons. But it's mere speculation about why he was forced to fight – why he was forced to  And you can't – you can't – making inferences is not making speculations, Your Honor. Howard – and just one thing. Even if he was forced to stand, I mean, he had the crutches to support him. He had the – he had – and therefore, there is no cases that say that, hey, you're standing in a cell for eight hours on crutches is objectively intolerable risk of serious harm. Why isn't that similar to Hope versus Peltzer where he's handcuffed to a hitching post? Okay. The hitching post is an entirely different set of facts or scenario. Because, for example, he isn't chained to anything. He doesn't allege he's chained to anything. I think that's the main thing. The other thing is in the Hope case, okay, those are outrageous facts. I mean, I think we can all agree that it's an outrageous fact that he was – he was hitched to a hitching post for seven hours. Roberts – well, but here he's saying he's forced to stand. And again, I have to infer, don't I, that forced means what it says, that he was forced to do that. So here, that's what he's – that's what he's alleged. I mean, I don't know what happened here. And that's the point, Your Honor. You don't know what happened. There is no inference to be drawn from what he's saying. He needs to say why he was forced to stand. What is it that made him forced – what was it that made him forced to stand? So I'm going to be making – the judge is going to be making – the district court judge is going to be making factual determinations at this point? No, no, no, no, Your Honor. That's not true. Well, that's sort of what you're saying, though, because he doesn't know. The judge doesn't know who's reviewing this complaint. And that's my point exactly, Your Honor, that it's because nobody knows. Nobody knows. Nobody can make an inference from why he was forced to stand, whether it was his subjective belief or whether it was due to the objective conditions of his confinement. I mean, if it's just his subjective belief, the reason why he's forced to stand, I think we'd all say then it's not an objective test, right? Am I – let's go on to the next point. This is all essentially an interlocutory appeal of a motion to dismiss, right?  Are these kinds of factual disputes appropriately before us? There are not – there cannot be a factual dispute in a motion to dismiss, because, as you're going to find out – No, not in a motion to dismiss. I'm interested in the appeal. This is my understanding. These appeals are often from summary judgment. But essentially what you're disputing is the way the district court read the complaint. Well, I'm disputing that the district court said that made – they made inferences from the complaint that are not permissible under ESALT.  What I'm asking you is, is that issue appropriately before us? Yes, Your Honor, because that's –  As opposed to the question whether taking the complaint as the district court understood it. That's what he saw. Excuse me. I haven't finished my sentence. I'm sorry, Your Honor. I thought you were. Taking, I think, the complaint as the district court understood it, was there a constitutional violation, and it clearly – and what – did it violate clearly established law?  I don't see how the Supreme Court cases about the limitations of this kind of appeal as applied to a motion to dismiss sanctioned us spending our time now disputing the way the district court read the complaint. Because, Your Honor, this is a question of law. The district court is not entitled to – whatever the district court is doing, all they can do is answer the legal question, which is before them, which is whether the fact the complaint states a plausible allegation. And that's the same question that's before this Court. It's whether or not he's stated a plausible allegation under Twombly and Iqbal. And, for example, in Iqbal, it's the same thing. The district court – I haven't seen that issue being the subject of an interlocutory qualified immunity appeal of this – in this posture. Ordinarily, what we're looking at is on a certain set of facts, was there a violation of a clearly established – Right. You're correct, Your Honor. That is it. But that is also exactly what Iqbal was all about. Iqbal was a qualified immunity case, too. And it was the same thing, that the district court said that, hey, he's alleged enough allegations to do this, and the Supreme Court said no, because you can't draw the inferences that you drew from the complaint. And so – and that's all a question of law, whether or not you can reasonably address the inference is a question of law. Your Honor, I would like to go further, because I would like to make sure that the Owners are aware that we also have two other points, other than the objective reasonableness. There's no – there's no factual allegation to this complaint at all that our office is – I just want to remind you, you only have a minute left. So you can use it or not use it. It's up to you. Okay. I'll sit down, Your Honor. Thank you. Thank you, Your Honors, and may it please the Court. Matthew Miyamoto on behalf of the Appellee, Reginald Howard. Any reasonable officer would have understood that the conditions of Mr. Howard's confinement violated the Eighth Amendment. Mr. Howard was forced to stand on crutches in a small, dirty shower cage for over eight hours without food, without water, without medication, without restroom access, and without penological justification. These conditions of confinement fall squarely within the boundaries of what the Supreme Court, this Court, and other circuits have held to constitute a clear Eighth Amendment violation. In Hope, for example, the Supreme Court encountered materially similar conditions of confinement and concluded in the words of the Court that they presented such a clear and obvious Eighth Amendment violation that qualified immunity should be denied, even though at the time there were no factually similar cases for the Court to base its decision on. My friend has raised a number of factual challenges to the allegations in Mr. Howard's complaint, but the Court can't accept those challenges as true. As Judge Berzon mentioned, accepting the facts as the district court construed them, my friend has not offered any persuasive distinction between this case and Hope, this Court's decision in Buckley, or the Sixth Circuit's decision in Barker. And do you think — I think Judge Berzon was starting to ask, do we even have jurisdiction to go into these kind of arguments? And what is your thought on that? Thank you, Judge Friedland. In all candor, I do think that the Court has jurisdiction to consider these fact-based arguments on a motion to dismiss. I understand from Iqbal that there's been a distinction in the case law between the summary judgment posture and the motion to dismiss posture on this issue. It's ultimately immaterial, though, because the factual inferences that the Court needs to draw in order to hold in Mr. Howard's favor are just the most straightforward inferences that one can draw from the complaint. I'll get into those inferences in a moment. Can you tell me where in the complaint, because I'm having — it must be there, because everybody says there is, but is this the statement that he was forced to stand? Yes. It's on ER 114, Judge Berzon. I also will note, in regards to your question about the wheelchair, Mr. Howard alleges that he needed the wheelchair in May of 2020. He asserts that with respect to a separate claim that's not an issue in this appeal. However, it's entirely plausible for the Court to conclude that Mr. Howard also required the use of a wheelchair in November of 2018 when the shower cage incident took place. Mr. Howard alleges that 17 days before the shower cage incident took place, he was transferred to Ely State Prison specifically so that he could receive medical care. He was designated as a state medical treatment inmate. We know that he used crutches. Standing in this confinement for more than eight hours caused him excruciating pain. From those allegations, it's entirely plausible to conclude that Mr. Howard required the use of a wheelchair in November of 2018 when this incident took place. You don't really need us to assume that, though, right? I mean, whether he needed a wheelchair or not, I didn't understand that to be a factor in your argument. No, absolutely not, Judge Friedland. And in fact, if the Court were to accept my friend's assumption as correct, it actually cuts against their argument. It suggests that the conditions of Mr. Howard's confinement were so physically severe that it may have contributed to or caused the condition that ultimately required the wheelchair. So however the Court comes out on the wheelchair issue, it's immaterial. Mr. Howard was forced to stand on crutches in excruciating pain for this more than eight-hour period. To continue with the factual allegations that are relevant to the deliberate indifference claim, it's absolutely plausibly alleged from Mr. Howard's allegations that defendants had notice of the conditions of his confinement, they were capable of taking ameliorative action in response to those conditions of confinement, and they didn't. So right here on ER 114, Mr. Howard alleges clearly for over eight hours, plaintiff complained to the defendants, Noriega, Chung, and Escamilla, about the conditions of his confinement. He requested water, he requested food, he requested medication, he requested restroom access from each of them, and they denied those requests. If the Court considers the additional allegations in Mr. Howard's pro se opposition to the motion to dismiss, and of course doesn't need to consider those allegations for Mr. Howard to win, we also have that Mr. Howard specifically requested emergency medical relief from each of the defendants, and they denied those requests. So it's clear from the straightforward allegations in Mr. Howard's complaint that the defendants had knowledge of the conditions of his confinement. Can we just go back to my fixated question about where does it say that he was forced to stand? On page 114. Fifth line up at the end. Thank you Judge Mendoza. Fifth line up. He, there was deliberate indifference to serious medical needs by one who was serious at pain while standing before all named defendants on crutches. Violating cruel and unusual punishment held in a small cage. Well, I'll figure it out later. I still don't see the language that said I was forced to stand. I think it's a paraphrase. It's not exactly, he doesn't have the exact words. All right. All right. And even still, it's a reasonable inference to draw from the complaint. He's got crutches. He's standing on crutches before all named defendants. He describes the cage as narrow or small. There's no factual support whatsoever for the assertion that he could have sat down. On the topic of factual assertions that are in the complaint, the defendants assert for the first time in the reply brief that Mr. Howard could have turned on the shower and drank from the shower. There's no support for the conclusion that he could have done that. This is a shower cage in a secure facility. It's entirely plausible to conclude that it's only operable from outside of the cage. Besides what she's standing on crutches. He's also fully clothed in the shower. So if he turned the cage on, he has no clue how much longer he's going to be in there. He's going to be soaking wet. That's not an adequate solution for the conditions of his confinement. I'd like to, again, draw the comparison to the cases that come before the court. There's hope in which the factual situation is extremely similar to what Mr. Howard experienced, and the court found it to be a clear and obvious Eighth Amendment violation. If anything, the conditions of Mr. Howard's confinement were more severe than the conditions that Mr. Hope experienced. Mr. Howard was forced to stand for longer. He arguably experienced more pain. He was denied medication. He was given no water. And the only facts that the defendants point to that distinguish this case from hope, that is that hope occurred on a hot summer day, and at one point the guards taunted the plaintiff with water. The Supreme Court explicitly stated that neither of those facts were material to its decision. The court described them as embellishments that exacerbated the Eighth Amendment violation, but were in no way necessary to it. So those can't possibly be of constitutional significance here. Additionally, the defendants haven't even attempted to distinguish this case from the version of the facts that the district court assumed as to Buckley. Buckley was the case in which the plaintiff was forced to stand for 11 hours without water and without medical care. The conditions of Mr. Howard's confinement are closely on point to Buckley, and in fact were much more severe given the significant pain that Mr. Howard experienced throughout this confinement. Defendants haven't even attempted to distinguish those cases. They just resort to these factual assertions that they didn't have knowledge, they didn't have the ability to change the conditions of the confinement. And the court, of course, can't accept those assertions as true on a motion to dismiss. One of the other factual points that I haven't covered yet is the defendant's assertion that they didn't have the ability to ameliorate the conditions of Mr. Howard's confinement. It is absolutely a plausible inference to draw from the complaint that the defendants were capable of moving Mr. Howard to another secure location in the facility. They're correction officers. That's one of the core jobs that they've got. Even if they couldn't do it without approval, they should have gotten approval. There's no indication that they even tried. And the defendants haven't even attempted to justify the fact that the defendants did not even give Mr. Howard some water or some food. This is dinner time. He misses a meal. They didn't give him a dinner. They didn't give him a restroom break. They didn't give him his required medication. There's no plausible justification for the denial of those necessities over this eight-hour period. Their argument on the authority that Mr. Howard needs to allege that the defendants have is based on a misapplication of this court's decision in Lear, which just stands for the simple proposition that the court needs to conclude that it's plausible the defendants were capable of ameliorating those conditions. It's absolutely plausible that Mr. Howard could have been given a cup of water. Defendants don't need... Mr. Howard doesn't need to specifically allege defendants were authorized to give me water in order for that allegation to be plausible. If there are no further questions, I'll respectfully rest and ask the court to affirm the district court's decision. Thank you for your time. Thank you very much. I think we have a little bit of time for rebuttal. First, I'd like to thank Judge Berzon for pointing out that there was actually no allegation, probably misspoke, with respect to that he was forced to stand by anybody. Second of all, I would like to clear up something in the record that I might probably have maybe misled the court, because when I have seen showers at NDOC prisons, the shower has a handle for the inmate to do, to operate the shower. But I have now been since informed that that has to be turned on by the bubble beforehand. So I just want to make that's clear that that's in the record so that I'm not misleading the court. But the thing is that... But there is no allegation here that they were even present when all this was going on. It doesn't... There's no allegation in the complaint at all that says that any of these defendants were present. It says that he made a complaint. My reading of the complaint is that he made a reading of the complaint. And again, what I would like to say is this court has a de novo review. This is de novo review. You're not supposed to take anything that the district court says. You're supposed to review this just as if the district court never made a ruling. And that's your obligation in doing a de novo review. But there was no allegation here that any of these defendants were even there. And it's not a reasonable inference. When there are sergeants, lieutenants, and medical staff present, that these officers would have any authority to change the conditions of confinement. When medical staff aren't saying that he's... anything's wrong, he doesn't have anything. That's the Peralta case. And also the Lear case. It's not... He has to allege specific facts. Lear says that specifically. He must allege specific facts showing that they had the ability to change the conditions. There is no allegation here. Under those facts alone, it is. And with respect to the Hope case, the Hope case, those aren't... those are facts that the district court... that the Supreme Court weren't... that they overlooked or that they were just adding. Basically, they were saying that this was... this is... they characterized it as that this is just so intolerable. If those facts weren't there, it would not have been an intolerable case where they could decide it without having prior precedent. It was those facts which made it prior precedent. We don't have those facts here. And therefore, there is... I respectfully request the Court to overturn the district court because the defendants are entitled to qualified immunity as there is no authority. In fact, there are numerous authorities that go the other direction, and I would say to reverse the district court on that matter. Thank you, Your Honors. Thank you, both sides, for the argument. This case is submitted, and we're adjourned for the day. All rise.
judges: BERZON, FRIEDLAND, MENDOZA